## MELLON v. UNITED STATES.

### No. 12285.

United States Court of Appeals
Fifth Circuit.

Nov. 6, 1948.

Samuel M. Johnston, of Mobile, Ala., and Charles I. Francis, Tarlton Morrow and Jack D. Head, all of Houston, Tex., for appellant.

Percy C. Fountain, U. S. Atty., of Mobile, Ala., for appellee.

Before McCORD and LEE, Circuit Judges, and MIZE, District Judge.

McCORD, Circuit Judge.

Appellant, W. L. Mellon, was indicted, tried, and convicted for violating Section 96 of Title 18, United States Code,[1] the offense involving an alleged attempt to bribe a representative of the United States War Shipping Administration, one Joseph W. Edgar, while Edgar was engaged in the performance of his official duties as a government marine surveyor.

The indictment contains three counts. Counts one and three, in substance, charge an attempt to influence Edgar for the purpose of obtaining his approval of certain repairs to a vessel known as the S. S. American Trader, at government expense. Count two charges an attempt to influence Edgar so as to commit a fraud on the United States Government in respect of approving such repairs. The jury found the defendant guilty as charged in the indictment, whereupon the court fined him $300 and sentenced him to the penitentiary for a year and a day.

The evidence reveals that Edgar was employed on December 5, 1945, the date of the alleged offense, as a marine surveyor by the War Shipping Administration at its branch office in Mobile, Alabama. It was a part of his duties to approve or dis-

approve requested repairs on vessels which had been chartered during the war by the government, and were being repaired for the purpose of redelivery to their owners. It was shown that the vessel in question, S. S. American Trader, was owned by the American Trading and Production Corporation, and that it had been chartered to the government under a "bare boat" charter agreement, which provided that when the vessel was returned to its owner it would be put in the same condition it was in at the time of its chartering, reasonable wear and tear excepted.

Some time prior to the alleged offense, it was deemed advisable to return the vessel in question to its owner. A survey of this vessel was thereupon made, and bids requested to effectuate the necessary repairs before re-delivery. The Waterman Steamship Corporation was the successful bidder, and the ship was in Mobile for the purpose of having the repairs made in early December, 1945. Among the repairs considered necessary for the vessel was the replacement of approximately fifty condenser tubes, and the renewal of this number of tubes was originally called for by the bids. However, the American Trading and Production Corporation, as owner of the vessel, was then insisting through its agents that the remaining number of condenser tubes in the vessel, approximately 3,050 in number, be replaced also. In any event, Edgar, as marine surveyor for the War Shipping Administration, had the immediate responsibility of either approving or disapproving the additional repairs requested. There is evidence that he had then concluded that the replacing of these additional condenser tubes was not justified or called for under the provisions of the charter agreement before re-delivery of the vessel, and had therefore denied them, or was at the point of doing so.

On December 2, 1945, appellant, while acting as an official for the corporation owning the vessel, made a trip down to Mobile from New York to discuss the general situation with respect to the proposed repairs. On December 5, 1945, he contacted Edgar with reference to the repairs in

[1] In 1948 Revision, 18 U.S.C.A. § 201.

question, and they lunched together at a local hotel. From this point on, the evidence as between Mellon and the government witness Edgar is in sharp dispute.

Edgar testified that after lunch they returned to his office where Mellon met Edgar's superior, a Mr. Bennett; that after leaving his office Mellon called him later that afternoon and requested a copy of the delivery survey on the vessel from the War Shipping Administration office, saying that he had left his copy in New York, and that he had some additional items he wished to discuss with Edgar concerning the repairs. Upon leaving his office that afternoon, Edgar claims he took the survey Mellon had requested to the hotel room where Mellon was staying, where no one else was present except the two of them. Edgar further testified that Mellon wanted him to go over certain additional items on the repair list, but that he did not have time to do so, and stated that he would look over the papers after he got home. Mellon thereupon gave Edgar the papers in an envelope, and Edgar took them with him. When he arrived home and began to look over the papers which Mellon had given him, Edgar noticed there were two envelopes instead of one, and found that the other one contained a $100 bill. Edgar was thereafter permitted to testify that the following morning he told his superior, Mr. Bennett, what had occurred, and showed the money to him; that he decided to return the money to Mellon and tried to contact him at his hotel, but could not do so until late in the afternoon, when he called him and requested that he return the survey to his office. When Mellon reached his office that afternoon, Edgar handed him the envelope with the $100 bill in it, and Mellon placed it in his brief case without comment, in the presence of both Edgar and Bennett.

After Edgar's testimony had been introduced, the witness Bennett was permitted to testify, over objection of appellant, that at lunch on the day after the alleged bribe attempt, Edgar had showed him the $100 bill and told him the details of what had occurred. This testimony was a substantial corroboration of Edgar's previous statements concerning his report of the incident.

The trial court also admitted into evidence a statement by Edgar to the effect that one Watkins, an independent marine surveyor, had examined the condenser tubes on the vessel along with him, and had afterwards stated to Edgar that in his opinion they did not need replacement.

Mellon admitted in his testimony that he gave Edgar the $100 bill, but claims that it was understood between them that the money was for the purchase of a case of whiskey, which Edgar had promised to help him get. He testified that when they lunched together he had inquired of Edgar whether whiskey was available at Mobile; that Edgar stated it was difficult to buy whiskey, but that he might be able to assist Mellon in obtaining some; that later that afternoon when Edgar came by his room he handed Edgar the $100 bill, and stated to him that it was to be used for the purchase of whiskey in keeping with their earlier conversation.

Appellant complains of certain rulings by the trial court on the admission and exclusion of evidence, of the giving and refusing of certain charges by the court, and of certain comments by the court during the trial of the case which, it is alleged, were improper, and tended to unduly prejudice him before the jury, thereby depriving him of his right to a fair and impartial trial.

We are of opinion the trial court erred in permitting the witness Edgar to testify that on the day after the alleged offense he told his superior, Bennett, the details of the alleged bribe attempt, and thereafter to permit Bennett in his testimony to bolster Edgar's version of the incident, as reported to him. When we come to measure the effect of this testimony in the light of the court's charge to the jury that the sole issue in the case was whether the jury chose to believe Edgar or Mellon, we are forced to the conclusion that the admission of this evidence was prejudicial to Mellon, as tending to bolster the testimony of the witness Edgar, and doubly emphasize his evidence before the jury as against that of the accused. The general rule is that a

witness may not be corroborated or have his sworn testimony reinforced by proof that on previous occasions he has made the same statements as those made in his testimony. 2 Wigmore, Evidence, 1122–1129; Inman Bros. v. Dudley & Daniels Lumber Co., 6 Cir., 146 F. 449, 455; Southern Pac. Co. v. Schuyler, 9 Cir., 135 F. 1015, 1017; Boykin v. United States, 5 Cir., 11 F.2d 484, 486.

We further find that the testimony of the witness Edgar to the effect that another surveyor, Watkins, had participated in the inspection of the condenser tubes along with him, and had stated to Edgar that they did not warrant replacement, was objectionable as hearsay, and should have been excluded. Bridges v. Wixon, 326 U. S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; Morris v. United States, 5 Cir., 149 F. 123, 125, 126.

We consider it unnecessary to pass upon the other questions presented, as they will probably not be raised upon another trial.

For the reasons herein assigned, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.